# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

Farley Thomas, III,

                Plaintiff,

    v.

Clark County, et al.,

                Defendants.

Case No. 2:25-cv-00903-ART-DJA

**Order**

Under 28 U.S.C. § 1915 Plaintiff is proceeding in this action *pro se* and has requested authority to proceed *in forma pauperis* (meaning, without paying the filing fee). (ECF No. 7). Plaintiff also submitted a complaint. (ECF No. 1-1). Because the Court finds that Plaintiff's application is complete, it grants the application to proceed *in forma pauperis.* The Court screens Plaintiff's complaint, dismisses certain claims, and allows others to proceed. The Court also orders service of Plaintiff's complaint.

## I.    *In forma pauperis* application.

Plaintiff filed the affidavit required by § 1915(a). (ECF No. 7). Plaintiff's and his spouse's income do not exceed their expenses. So, the Court finds that Plaintiff has shown an inability to prepay fees and costs or give security for them. Accordingly, the request to proceed *in forma pauperis* will be granted under 28 U.S.C. § 1915(a). The Court will now review Plaintiff's complaint.

## II.    Legal standard for screening.

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend

the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Id.* at 678. Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law. *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002). Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states."  Generally speaking, diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

III.    Screening the complaint. [1]

Plaintiff sues the Las Vegas Metropolitan Police Department ("LVMPD"), LVMPD Officer Wall, LVMPD Officer Booth, LVMPD Officer Atkinson,[2] the City of Las Vegas,[3] and Clark County for declaratory relief, injunctive relief, and damages arising out of a traffic stop that occurred on May 26, 2023.  Plaintiff alleges that he was dropping someone off at the Rio Hotel and Casino when Wall and Booth, who were parked near the entrance, began following him in their patrol car.  Plaintiff references body camera footage from the incident, alleging that Wall reported to dispatch that Plaintiff was driving erratically and that Wall was going to conduct a DUI investigation.  Plaintiff alleges that this was a lie because the footage shows him driving normally and because neither Wall nor Booth followed DUI procedures, questioned him regarding alcohol or drugs, or performed any sobriety testing during the stop.[4]  Instead, after the

---

[1] Plaintiff's allegations are often scattered, out of order, and repeated multiple times in various ways throughout his thirty-three page complaint.  The Court does its best to summarize and piece together his allegations in a linear fashion.  The Court simply summarizes Plaintiff's allegations and does not intend this summary to constitute findings of fact.

[2] Plaintiff does not indicate whether he is suing Wall, Booth, and Atkinson in their personal or official capacities.  However, the Court liberally construes Plaintiff's complaint as bringing his claims against these Defendants in their personal capacities only.  This is because an official capacity suit against a municipal officer is equivalent to a suit against the entity.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  So any official capacity claims Plaintiff brings against these officers would be redundant because Plaintiff has also named LVMPD as a Defendant.

[3] Plaintiff does not name the City of Las Vegas as a Defendant, but brings claims against it in the body of his complaint.

[4] Plaintiff alleges in various places that "[l]ying is a **Violation of 1/000.02 LAW ENFORCEMENT CODE OF ETHICS A.S.1.1.2**…"  Plaintiff attaches a document that appears to the LVMPD code of ethics.

officers pulled him over, Wall began yelling at Plaintiff, told Plaintiff to get his license and registration, then gave Plaintiff contradicting instructions by instead asking Plaintiff to exit the car and threatening to drag Plaintiff out if he did not comply.

After Plaintiff exited the car, Wall pushed him and told Plaintiff he was "acting like a fucking clown." Booth then kicked the inside of Plaintiff's leg twice, hard enough to almost cause Plaintiff to fall, to get him to spread his feet. Plaintiff alleges that this use of force was a violation of LVMPD's use of force policy. Plaintiff asserts that Booth searched him, inappropriately touching him on and around his genitals. Plaintiff was then handcuffed away from his car.

While Plaintiff was handcuffed away from his car, Wall searched the car despite Plaintiff objecting to the search. Wall claimed five reasons for searching the car—Plaintiff's erratic driving, failure to stop, putting his hazard lights on in the middle of the road, acting drunk, and not rolling his windows down during the stop—none of which were true and all of which is belied by body camera footage. Wall also claimed that the search of the vehicle was not a search at all, but was instead a frisk for officer safety. But Plaintiff argues that the officers had no reasonable suspicion to search his car or his person and no reason to believe that he was armed and dangerous. Plaintiff alleges that LVMPD failed to train Wall regarding proper searches.

During the search, Wall found Plaintiff's legally registered firearm. Wall stated, "you see why you do things, and "I already knew you had a gun in the car," which statements Plaintiff asserts indicated that Wall was relying on a hunch when pulling him over, rather than reasonable suspicion. Booth then called for backup, speaking on the phone with another officer, Officer Cabrera. During that call, Plaintiff claims that Booth lied about Plaintiff using profanity and refusing to exit the vehicle. Plaintiff also claims that Booth admitted to pulling Plaintiff over for racially motivated reasons. Specifically, Booth explained to Cabrera that Plaintiff was pulled over because "he did all this weird shit, so finally we stop him. He won't roll his windows down, says I'm not getting out this fucking car, just a dick dude." Cabrera responded, "[t]hought you guys were going to pull over that Mercury," to which Booth replied, "[n]o, we saw this dude drive by a couple times and he's just sketch, so were like he's probably related." Plaintiff also

asserts that he believes Booth meant "gang related" when he said "sketch" given the fact that Wall was wearing a gang unit badge. Plaintiff alleges that Wall and Booth were using a criminal profiling technique, but really based their decision to pull Plaintiff over on his race. Plaintiff alleges that LVMPD is responsible for maintaining a custom or policy for identifying criminals and for failing to properly train Wall and Booth, resulting in them "'mis-profiling' [him] as a 'sketchy gang member' based on [his] perceived race, color or ethnicity."

During Wall's search of the car, another officer, Officer Atkinson responded to Plaintiff's objections to the search by saying "it doesn't matter," which Plaintiff took to mean that his constitutional rights did not matter. Additionally, Plaintiff alleges that Wall wrongfully extended the stop by not conducting any DUI investigation procedures and by continually running Plaintiff's name through various state databases, even though a search of his name initially resulted in no criminal history. Wall also ran the number on Plaintiff's firearm though the police database, which revealed that the firearm was "clean" and registered to Plaintiff. But Wall continued to run Plaintiff's name through databases.

Wall then returned Plaintiff's firearm, but put it in the trunk of Plaintiff's vehicle for officer safety, even though Plaintiff had no record and the firearm was legally his. Plaintiff asserts that, while returning the firearm, Wall continued to search the trunk of the vehicle. Plaintiff again objected to the search, but Wall stated, "I'm putting your gun back bro," which statement is belied by Atkinson's and Wall's body camera footage showing Wall searching the trunk. Plaintiff then requested a supervisor. But Wall said, "we are done here, we have no reason to detain you," and declined.

The next week, Plaintiff reported the stop to the LVMPD Internal Affairs Bureau in writing. Plaintiff waited for weeks and called multiple times to learn the disposition of his complaint. Plaintiff ultimately went in person on June 22, 2023, to speak with the Internal Affairs supervisor, who Plaintiff does not name. That supervisor agreed with Plaintiff that the way Wall had spoken to him was wrong, but asserted that he could not say any more. Following that meeting, Plaintiff asserts that he never received a letter regarding his complaint like he was

supposed to. Plaintiff then submitted a complaint to the Citizens Review Board on August 22, 2023.

A little less than two years later, on March 19, 2025, Plaintiff stopped by the LVMPD's headquarters to update his address so that any letter would get to him. However, officers at the headquarters stated that they had no record of Plaintiff's complaint ever being filed. So, Plaintiff filed a new complaint on March 25, 2025. On April 29, 2025, Plaintiff heard back from Internal Affairs Officer Farris, who claimed to have had the original complaint, confirmed that an investigation did occur, but claimed that Farris could not say how it was determined either way. Plaintiff alleges that he does not believe that Internal Affairs ever received his original complaint. He also claims that he believes that Wall and Booth lied and stated that the erratic driving they claimed to have witnessed occurred before their body camera footage was active.

Plaintiff alleges that the Internal Affairs officer in charge of his complaint breached a duty of care to preserve, protect, and process Plaintiff's complaint. Plaintiff asserts that the City of Las Vegas is responsible for maintaining a policy of failing to train and supervise Internal Affairs officers. Plaintiff alleges that the fact that his report disappeared demonstrates that LVMPD has a custom of practice of not holding its officers accountable and encouraging racial profiling.

Plaintiff also alleges that Clark County and the City of Las Vegas[5] have policies, customs, and practices that allow constitutional violations because LVMPD is capable of being involved in the Citizens Review Board. Plaintiff points out that the Citizens Review Board is supposed to be an independent civil organization charged with independently reviewing police misconduct. However, Plaintiff asserts that because the LVMPD had the final say regarding who becomes a member of the Citizens Review Board, the organization has a conflict of interest and the City of Las Vegas demonstrates deliberate indifference to this conflict. Plaintiff also asserts that the Citizens Review Board is biased because it accepts former law enforcement officers—albeit not from LVMPD—and law enforcement should not be part of the board at all. Plaintiff claims that

---

[5] Plaintiff occasionally refers to the City of Las Vegas and Clark County interchangeably in his allegations regarding oversight of the Citizens Review Board.

the City of Las Vegas also failed to properly train the Citizens Review Board to identify constitutional violations because he submitted a complaint but received a response "concluding no police conduct or constitutional violations."

Plaintiff adds that LVMPD has demonstrated a repeated common practice of constitutional violations and deliberate indifference to those violations because it received 3,544 complaints of police misconduct in 2023 and paid roughly $13.5 million in civil rights claims and lawsuits in 2023.  Plaintiff asserts that this is clear evidence of a common practice of police misconduct.  Plaintiff also references statistical data showing that LVMPD's Internal Affairs department and the Citizens Review Board[6] decide a majority of complaints, including complaints about discrimination and use of force, in favor of police officers.  Plaintiff also lists statistics regarding arrests for low-level offenses by race and ethnicity, which statistics show that Black and Latino individuals are more likely to be arrested and killed by police than white individuals.

Due to the May 26, 2023, incident, Plaintiff asserts that he has lost business because he no longer accepts rides—presumably as a driver for a rideshare company—in the tourist heavy part of town where he was pulled over.  Because of this loss in business, Plaintiff has lost income, lost a separate business opportunity, and has suffered emotional distress affecting his marriage and his involvement at his jiu jitsu gym.

Plaintiff lists seventeen causes of action in his complaint.  However, throughout his complaint and within each cause of action Plaintiff lists various statutes and theories of liability.  The Court does its best to parse out the claims that Plaintiff alleges and liberally construes his complaint as bringing the following claims, which the Court organizes as follows: (1) Plaintiff's Constitutional claims arising under 42 U.S.C. § 1983; (2) Plaintiff's Title VII claim; (3) Plaintiff's state law claims; and (4) Plaintiff's claims arising under criminal statutes.

---

[6] Plaintiff refers to the Citizens Review Board using different terms such as "independent review board," and "Las Vegas Independent Review Board."  The Court liberally construes his complaint as referring to the Citizens Review Board in these instances.

**A.**     *Plaintiff's claims arising under 42 U.S.C. § 1983.*

42 U.S.C. § 1983 does not create substantive rights but instead "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

1.     <u>Fourth Amendment unreasonable seizure.</u>

The Fourth Amendment governs the reasonableness of government searches and seizures. See U.S. Const., amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ... but upon probable cause ..."). The stopping of a vehicle and detention of its occupants is a "seizure" under the Fourth Amendment. *Colorado v. Bannister*, 499 U.S. 1, 4 n.3 (1980). A vehicle stop is reasonable if it is supported by probable cause to believe that a traffic violation occurred. *See When v. U.S.*, 517 U.S. 806, 810 (1996) (explaining that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred, even if the violation is a pretext for the stop). A traffic stop must be limited in its scope and no longer than necessary to effectuate the purposes of the traffic mission. *See United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023). A stop may be extended to conduct an investigation into matters other than the original traffic violation so long as the officers have reasonable suspicion of an independent offense. *Id.*

Here, Plaintiff has alleged a colorable claim that Wall and Booth violated his Fourth Amendment rights by stopping him and prolonging that stop. Plaintiff alleges that the officers had no probable cause to pull him over because he was not actually committing any of the traffic infractions they said he was. Plaintiff also alleges that Wall wrongfully prolonged the stop by continually running Plaintiff's name through databases to find possible convictions even though Plaintiff gave officers no reason to believe he had committed an independent offense. The Court

will therefore allow Plaintiff's Fourth Amendment unreasonable seizure claim to proceed against Wall and Booth for pulling him over with no reason and against Wall for prolonging the stop.

### 2.    Fourth Amendment unreasonable search.

It is also a violation of the Fourth Amendment to conduct a search without a warrant or outside the bounds of a few, well-delineated exceptions to the warrant requirement. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009). One exception is the search-incident-to-lawful-arrest exception, which permits an officer to search "the arrestee's person and the area within his immediate control." *See U.S. v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015) (internal quotations and citations omitted). Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. *Gant*, 556 U.S. at 351.

Here, Plaintiff has alleged a colorable claim that Wall and Booth violated his Fourth Amendment rights by searching his person and his vehicle. As a preliminary matter, Plaintiff alleges that Wall and Booth had no legitimate reason to pull him over and then, despite his compliance with their instructions, pulled him out of the car and handcuffed him. So, Plaintiff has alleged that Booth and Wall unlawfully arrested him and, as a result, did not have a lawful basis to search either his car or his person. Plaintiff also alleges that he was handcuffed away from his car, so Wall's claim that he was searching the car for officer safety did not justify the search of the car. The Court will therefore allow Plaintiff's Fourth Amendment unreasonable search claim to proceed against Wall and Booth.

### 3.    Fourth Amendment excessive force.

Allegations of excessive force during the course of an arrest are analyzed under the Fourth Amendment, which protects the right against unreasonable seizures of a person. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Assessing the Constitutionality of police action during a seizure involves "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396. However, there can be no "countervailing governmental interest" to justify sexual

misconduct. *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001). And "[w]here there is no need for force, any force used is constitutionally unreasonable." *Id.* (internal citations and quotations omitted, cleaned up). "Of course, not every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment. Some bodily intrusions may be provably accidental or *de minimis* and thus constitutionally reasonable." *Id.*

Here, Plaintiff has alleged a colorable claim for excessive force against both Wall for pushing him and Booth for kicking him, but not against Booth for his alleged touching on and around Plaintiff's genitals during Booth's search. Wall's use of force, as alleged, was excessive because Plaintiff claims that he was attempting to comply with Wall's commands, but Wall pushed him anyway, thereby using force where none was necessary. Booth's use of force, as alleged, was also excessive because Plaintiff claims that Booth kicked him hard enough to make him almost fall down when asking Plaintiff to spread his feet. Plaintiff claims that he was compliant and so, kicking him was entirely unnecessary. However, Plaintiff does not provide enough facts to state that Booth used excessive force when searching Plaintiff. Although Plaintiff claims that Booth ran his hand over Plaintiff's clothes and over and around his genital area, Plaintiff does not allege that Booth did so gratuitously or lingered unnecessarily such that the touching was more than a *de minimus* part of Booth's pat-down search. The Court will therefore allow Plaintiff's Fourth Amendment excessive force claim to proceed against Wall and Booth for Wall pushing Plaintiff and for Booth kicking him. But the Court will dismiss Plaintiff's Fourth Amendment excessive force claim against Booth for touching him on and around his genital area without prejudice and with leave to amend.

### 4. Fourth Amendment failure to intervene.

Law enforcement officers have a duty to intercede when their fellow officers violate a person's constitutional rights, but only if they had an opportunity to intercede. *See Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000). Here, Plaintiff has alleged a colorable claim that Atkinson failed to intervene in Wall's unlawful search of Plaintiff's vehicle. Plaintiff alleges that he told Atkinson, while Plaintiff was handcuffed and away from his car, that he objected to Wall's search. But Atkinson, who was nearby and thus able to intercede, failed to do so. The

Court will therefore allow Plaintiff's Fourth Amendment failure to intervene claim to proceed against Atkinson.

### 5. Racial profiling in violation of the Fourteenth Amendment.

"Racial profiling can constitute a deprivation of a citizen's right to equal protection under the law." *Thomas v. Melendez*, No. 1:16-cv-01759-LJO-JLT, 2016 WL 7116720 at *3 (E.D. Cal. Dec. 7, 2016) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996) and *James v. City of Seattle*, No. C10-1612-JLR, 2011 WL 6150567, at *13 (W.D. Wash. Dec. 12, 2011)). To state a claim for racial profiling in violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005). Here, Plaintiff has not alleged a colorable claim for racial profiling because he does not allege facts plausibly showing that Wall or Booth acted with an intent or purpose to discriminate against him based on his membership in a protected class. As an initial matter, Plaintiff does not identify his race or ethnicity. Additionally, while Plaintiff asks the Court to infer from Booth's statement that they "saw [Plaintiff] drive by a couple times and he's just sketch" to mean that they profiled him based on his race, Plaintiff does not allege why this statement indicates that he was being profiled. So, the Court will dismiss this claim without prejudice and with leave to amend.

### 6. *Monell* claims.

A municipality may be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). To state a claim for municipal or county liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit. *City of Canton*, 489 U.S. at 385. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipalities are not vicariously liable under § 1983 for their employees' actions. *Id*. at 60.

Municipalities can only be liable for the infringement of constitutional rights under certain circumstances. *Monell*, 436 U.S. at 690-95. "[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Here, Plaintiff's allegations are too conclusory to establish *Monell* liability against LVMPD, the City of Las Vegas, or Clark County. Plaintiff has successfully alleged the following constitutional violations: (1) unreasonable seizure in violation of the Fourth Amendment against Wall and Booth for pulling him over with no reason; (2) unreasonable seizure in violation of the Fourth Amendment against Wall for prolonging the stop unnecessarily; (3) unreasonable search in violation of the Fourth Amendment against Wall for searching his car; (4) unreasonable search in violation of the Fourth Amendment against Booth for searching his person; (5) excessive force in violation of the Fourth Amendment against Wall for pushing him; (6) excessive force in violation of the Fourth Amendment against Booth for kicking him; and (7) failure to intervene to prevent Fourth Amendment violations against Atkinson. However, Plaintiff has not sufficiently alleged that the policies, customs, failures to train, or decisions by a final policymaker of the LVMPD, City of Las Vegas, or Clark County caused the violations at issue. Plaintiff's allegations are entirely conclusory and fail to describe the policies or customs and failures to train that he references. Additionally, Plaintiff also often refers to LVMPD, the City of Las Vegas, and Clark County interchangeably.

Much of Plaintiff's allegations regarding these municipal entities' policies and customs have to do with the fact that LVMPD gets the final say over who is appointed to the Citizens Review Board, which fact Plaintiff asserts means that the Citizens Review Board is not really an independent agency. However, while Plaintiff alleges that LVMPD was negligent in handling his complaint, Plaintiff does not allege any *constitutional* violations related to the Citizens Review Board or the manner in which LVMPD handled his complaint. And ultimately, Plaintiff's allegations that LVMPD, the City of Las Vegas, and Clark County failed to train their employees to handle complaints like Plaintiffs and failed to ensure an independent complaint process are too

conclusory to state a claim upon which relief can be granted.  The Court therefore dismisses Plaintiff's *Monell* claims against LVMPD, the City of Las Vegas, and Clark County without prejudice and with leave to amend.

### B.    Plaintiff's 42 U.S.C. § 1985 claim.

42 U.S.C. § 1985(3) proscribes private conspiracies to "deny equal protection of the laws." *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n.3 (9th Cir. 1985).[7]  To state a cause of action under 42 U.S.C. § 1985(3), a complaint must allege: "(1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)).  "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.  The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. at 102.  Section 1985(3) may extend beyond race "only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (internal quotations omitted).  The Ninth Circuit requires "either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Id*.

[7] Plaintiff does not identify the subsection of 42 U.S.C. § 1985 under which he brings his claim.  However, Section 1985(1) is not on point because it concerns preventing an officer of the United States from performing his or her duties.  *See Bretz*, 773 F.2d at 1027 n.3.  Section 1985(2) is also not on point because it concerns conspiracy to obstruct justice in the federal courts, or to intimidate a party, witness, or juror in connection therewith and also concerns conspiracy to obstruct justice in any State or Territory.  *See id.*

Plaintiff's allegations are not sufficient to plausibly state a cause of action under 42 U.S.C. § 1985(3). Plaintiff brings this claim against Wall, Booth, LVMPD, and the City of Las Vegas, asserting that Wall and Booth had a conspiracy to violate his civil rights and that LVMPD and the City of Las Vegas were indirectly involved in the conspiracy by not holding Wall and Booth accountable for their actions. Plaintiff bases this claim on the fact that Booth stated that "we saw this dude drive by a couple times and he's just sketch, so were like he's probably related." (ECF No. 1-1 at 9). Plaintiff asserts that Booth's statement is evidence that he and Wall knowingly conspired against Plaintiff to interfere with his civil rights "based on hunches and biases due to how he looks." (*Id.*). Plaintiff claims that LVMPD's "protection of these officers violates [his] right to equal protection of the laws" and that the City of Las Vegas conspired with LVMPD "by having policies, procedures and customs in place that allow LVMPD to continually break constitutional laws." (*Id.* at 27). However, Plaintiff's allegations are too vague and conclusory to plausibly state that Wall, Booth, LVMPD, and the City of Las Vegas had an agreement to violate his civil rights. Moreover, Plaintiff does not allege conspiracy based on race other than his vague allegations that Booth and Wall pulled him over because of how he looks. The Court therefore dismisses Plaintiff's 42 U.S.C. § 1985 claim without prejudice and with leave to amend.

### C.   *Plaintiff's Title VII claim.*

Title VII, codified at 42 U.S.C. §§ 2000e et seq. allows a person to sue his or her employer for discrimination on the basis of race, color, religion, gender or national origin if he has exhausted both state and Equal Employment Opportunity Commission administrative procedures. *See Walls v. Las Vegas Metro. Police Dep't*, No. 2:12-CV-01629-JCM, 2013 WL 1182095, at *7 (D. Nev. Mar. 20, 2013). Plaintiff does not allege he was employed by any of the Defendants. The Court will therefore dismiss Plaintiff's Title VII claim without prejudice and with leave to amend.

### D.   *Plaintiff's state law claims.*

#### 1.   Assault.

To establish a claim for assault under Nevada law, a plaintiff must show that the defendant (1) intended to cause harmful or offensive physical contact, and (2) the victim was put

in apprehension of such contact.  Restatement (Second) of Torts, § 21 (1965); *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001).  In the context of an arrest, contact may only constitute an assault if the officer used unreasonable force in effecting the arrest.  *Walls v. Las Vegas Metropolitan Police Dept.*, No. 2:12-CV-01629-JCM-PAL, 2013 WL 1182095, at *6 (D. Nev. Mar. 20, 2013) (citing *Yada v. Simpson*, 913 P.2d 1261, 1262–63 (Nev.1996), *superseded by statute on other grounds as set forth in RTTC Communications, LLC v. Saratoga Flier, Inc.,* 110 P.3d 24, 29 (Nev.2005)).

Here, Plaintiff has alleged a colorable claim for assault against Wall and Booth.  Liberally construing his complaint, Plaintiff alleges that both officers used excessive force in removing him from his vehicle and searching him and that he was placed in apprehension of that contact.  The Court will therefore allow Plaintiff's assault claim to proceed against Wall and Booth.

2.    Intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress under Nevada law, a plaintiff must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Welder v. Univ. of S. Nevada*, 833 F.Supp.2d 1240, 1245 (D. Nev. 2011) (quoting *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 886 (1999)).  "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotations omitted).

Plaintiff has alleged a colorable claim for intentional infliction of emotional distress against Wall and Booth.  Plaintiff alleges that the officers engaged in extreme and outrageous conduct by Wall and Booth pulling him over without cause, Wall using excessive force to pull him out of the car and Booth using excessive force to search him.  Plaintiff also alleges that he has suffered severe emotional distress as evidenced by his loss of interest in jiu jitsu and the toll on his marriage.  Finally, Plaintiff asserts that Wall and Booth's actions were the cause of his distress.  So, the Court will allow Plaintiff's intentional infliction of emotional distress claim to proceed against Wall and Booth.

### 3. Battery.

To establish a battery claim under Nevada law, a plaintiff must show that the defendant (1) intended to cause harmful or offensive contact, and (2) such contact did occur. Restatement (Second) of Torts, §§ 13, 18 (1965); *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001). In the context of an arrest, contact may only constitute battery if the officer used unreasonable force in effectuating the arrest. *Yada*, 913 P.2d at 1262-63. Plaintiff has alleged a colorable claim for battery against Wall and Booth because he alleges that both officers touched him in in a harmful or offensive way by using more force than was necessary. The Court will therefore allow Plaintiff's battery claim to proceed against Wall and Booth.

### 4. Negligence.

To state a claim for negligence, a plaintiff must allege that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injuries; and (4) the plaintiff suffered damages. *Sadler v. PacifiCare of Nev.*, 340 P.3d 1264, 1267 (Nev. 2014). Whether a defendant owes a plaintiff a duty of care is question of law. *Scialabba v. Brandise Constr. Co. Inc.*, 921 P.2d 928, 930 (Nev. 1996). "Police officers unquestionably owe a duty of care to the general public." *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F.Supp.3d 999, 1014 (D. Nev. 2014) *reversed on other grounds by Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 670 Fed. App'x 617 (9th Cir. 2016). It is an undecided question in Nevada whether a plaintiff can raise a theory of negligence based on an officer's intentional use of force. *K.C. by and through Navarro v. Las Vegas Metropolitan Police Department*, 163 F.4th 701, 701 (9th Cir. 2026) (certifying the question to the Nevada Supreme Court); *see Las Vegas Metro. Police Dep't v. K.C.*, No. 91870 (Nev. January 2, 2026) (order certifying question filed in the Nevada Supreme Court).

Plaintiff brings his negligence claim against Wall, Booth, the City of Las Vegas, and LVMPD. Plaintiff alleges that Wall and Booth acted negligently by racially profiling him, by lying about why they pulled him over, and by using excessive force. Plaintiff claims that the City of Las Vegas was negligent in not holding LVMPD accountable and that LVMPD has been negligent in not training its officers. Plaintiff also alleges that LVMPD's Internal Affairs officer

who handled his complaint had a duty of care to process plaintiff's complaint and that the officer breached that duty of care because Plaintiff's complaint disappeared.

Plaintiff has not alleged a colorable claim for negligence against the City of Las Vegas or LVMPD because his claims are too conclusory. Plaintiff identifies no facts regarding the City of Las Vegas' failures to hold LVMPD accountable and identifies no facts regarding LVMPD's failure to train its officers. Plaintiff's claims regarding the manner in which Internal Affairs handled his complaint are similarly lacking. Plaintiff asserts that the LVMPD's Internal Affairs officer who handled his complaint had a duty of care to process plaintiff's complaint and that the officer breached that duty of care because Plaintiff's complaint disappeared. However, Plaintiff simply states that the "Internal Affairs officer" owed him a duty of care without indicating whether he is referencing Internal Affairs Officer Farris, the Internal Affairs supervisor who he references but does not name, or some other Internal Affairs officer. Moreover, Plaintiff does not allege how the specific Internal Affairs officer in question acted negligently. The Court will therefore dismiss Plaintiff's negligence claims as alleged against the City of Las Vegas and LVMPD without prejudice and with leave to amend.

On the other hand, Plaintiff alleges a colorable claim for negligence against Wall and Booth. Plaintiff alleges that Wall and Booth acted negligently when they pulled him over without reason and used excessive force. Liberally construing Plaintiff's complaint, he alleges that Wall and Booth owed him a duty of care as police officers and that they breached that duty by not following the code of ethics and use of force policy when pulling him over and arresting him. Although Plaintiff alleges intentional conduct, for screening purposes, he has alleged a colorable claim. Plaintiff has also alleged that Wall and Booth's actions caused the injuries and damages he has suffered because the arrest resulted in Plaintiff losing business opportunities and experiencing distress in his marriage.[8] The Court therefore allows Plaintiff's negligence claim to proceed against Wall and Booth.

---

[8] Plaintiff separately invokes the "loss of opportunity doctrine," apparently as a different cause of action. However, it appears that Plaintiff is alleging the causation element of negligence in bringing this claim, asserting that Wall and Booth are responsible for the business and personal

## E.    Plaintiff's claims arising under criminal statutes.

Plaintiff invokes the following federal and state criminal statutes: 18 U.S.C. §§ 241, 242, 244, 249, 1519, and 2244; and Nevada Revised Statutes §§ 199.220, 200.310, and 200.571. However, "a private citizen lacks a judicially cognizable interest in the prosecution or nonproseuction of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Tia v. Crim. Investig. Demanded as Set Forth*, 441 Fed. Appx. 457, 458 (9th Cir. 2011) (affirming dismissal of "request for criminal investigation into the alleged RICO conspiracy" because the plaintiff "lack[ed] standing to compel an investigation or prosecution of another person"). And these statutory provisions do not otherwise provide private causes of action. Plaintiff therefore cannot bring his civil claims under these statutes and the Court dismisses Plaintiff's claims brought under them without prejudice and with leave to amend to the extent Plaintiff can identify a private cause of action.

**IT IS THEREFORE ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 7) is **granted.** Plaintiff shall not be required to pre-pay the filing fee. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor. This order granting leave to proceed *in forma pauperis* shall not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file Plaintiff's complaint (ECF No. 1-1) on the docket.

**IT IS FURTHER ORDERED** that the following claims are **dismissed without prejudice and with leave to amend**:

(1) Plaintiff's Fourth Amendment excessive force claim against Booth for touching
    Plaintiff on and around his genital area;

---

struggles he has experienced after the incident. So, the Court does not construe "loss of opportunity" to be a separate cause of action but to be one of the elements of Plaintiff's negligence claim.

(2) Plaintiff's racial profiling in violation of the Fourteenth Amendment claim;

(3) Plaintiff's *Monell* claim;

(4) Plaintiff's claim arising under 42 U.S.C. § 1985(3);

(5) Plaintiff's Title VII discrimination claim;

(6) Plaintiff's negligence claim against the City of Las Vegas and LVMPD;

(7) Plaintiff's claims arising under criminal statutes 18 U.S.C. §§ 241, 242, 244, 249, 1519, and 2244; and Nevada Revised Statutes §§ 199.220, 200.310, and 200.571.

**IT IS FURTHER ORDERED** that Plaintiff may proceed on the following claims:

(1) Plaintiff's Fourth Amendment unreasonable seizure claim against Wall and Booth for pulling him over with no reason and against Wall for prolonging the stop;

(2) Plaintiff's Fourth Amendment unreasonable search claim against Wall and Booth;

(3) Plaintiff's Fourth Amendment excessive force claim against Wall and Booth for Wall pushing Plaintiff and for Booth kicking him;

(4) Plaintiff's Fourth Amendment failure to intervene claim against Atkinson;

(5) Plaintiff's assault claim against Wall and Booth;

(6) Plaintiff's battery claim against Wall and Booth;

(7) Plaintiff's negligence against Wall and Booth.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to add the Vegas Metropolitan Police Department to the docket as an Interested Party and to add LVMPD's General Counsel[9] to the Interested Party on the docket.

---

[9] The information for LVMPD's General Counsel is as follows:

Matthew J. Christian, Esq.

Assistant General Counsel

Las Vegas Metropolitan Police Department

400 S. Martin Luther King Blvd., Bldg. B

Las Vegas, NV 89106

(702) 828-3310

M16091C@lvmpd.com / claims@lvmpd.com

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to electronically serve a copy of this order and Plaintiff's complaint on LVMPD at both email addresses: M16091C@lvmpd.com and claims@lvmpd.com. This does not indicate acceptance of service.

**IT IS FURTHER ORDERED** that service must be perfected on or before **June 4, 2026**. *See* Fed. R. Civ. P. 4(m).

**IT IS FURTHER ORDERED** that on or before **March 27, 2026,** LVMPD shall file a notice advising the Court and Plaintiff of: (a) the names of the defendants for whom it accepts service; (b) the names of the defendants for whom it does not accept service, and (c) the names of the defendants for whom it is filing the last-known-address information under seal. As to any of the named defendants for whom LVMPD cannot accept service, LVMPD will file, under seal, but will not serve Plaintiff the last known address(es) of those defendant(s) for whom it has such information. If the last known address of the defendant(s) is a post office box, LVMPD will attempt to obtain and provide the last known physical address(es).

**IT IS FURTHER ORDERED** that if LVMPD cannot accept service for any of the named defendant(s), Plaintiff shall file a motion identifying the unserved defendant(s), requesting issuance of summons, and specifying a full name and address for the defendant(s). If LVMPD has not provided last-known-address information, Plaintiff shall provide the full name and address for the defendant(s).

**IT IS FURTHER ORDERED** that if LVMPD accepts service of process for any named defendant(s), such defendant(s) shall file and serve an answer or other response to the complaint (ECF No. 53) on or before **May 5, 2026**. *See* Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon defendant(s), or if an appearance has been entered by counsel, upon their attorney(s), a copy of every pleading, motion or other document submitted for consideration by the Court. If Plaintiff electronically files a document with the Court's electronic-filing system, no certificate of service is required. Fed. R. Civ. P. 5(d)(1)(B); Nev. Loc. R. IC 4-1(b); Nev. Loc. R. 5-1. However, if Plaintiff mails the document to the Court, Plaintiff shall include with the original document submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the

defendants or counsel for the defendants.  If counsel has entered a notice of appearance, Plaintiff shall direct service to the individual attorney named in the notice of appearance, at the physical or electronic address stated therein.  The Court may disregard any document received by a district judge or magistrate judge which has not been filed with the Clerk, and any document received by a district judge, magistrate judge, or the Clerk which fails to include a certificate showing proper service when required.

DATED: March 6, 2026

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE